```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

JASON BALKUM,

                        Plaintiff,

        -v-

DAVID M. UNGER, BENJAMIN C. AUGUSTIN and
G. CONIGLIO, sued in their individual capacities,

                        Defendants.
_____

DECISION AND ORDER
06-CV-6578 CJS

APPEARANCES

For Plaintiff:        Jason Balkum, *pro se*
                        352 Hayward Avenue, Apartment 2
                        Rochester, New York 14609

For Defendants:     Emil J. Bove, Jr., Esq.
                        Assistant Attorney General
                        Office of the New York State Attorney General
                        144 Exchange Boulevard, Suite 200
                        Rochester, New York 14614

INTRODUCTION

     Plaintiff, formerly a prison inmate in the custody of the New York State Department of Correctional Services ("DOCS"), is suing pursuant to 42 U.S.C. § 1983, alleging that while he was in DOCS custody, Defendants violated his Eighth Amendment rights by denying him appropriate medical care. Now before the Court is Defendants' motion for summary judgment [#19]. For the reasons that follow, the application is granted.

BACKGROUND

Unless otherwise noted, the following are the undisputed facts of this case viewed in the light most favorable to Plaintiff. At all relevant times, Defendant David Unger ("Unger") was the Superintendent of Livingston Correctional Facility ("Livingston"), Defendant Benjamin Agustin, M.D. ("Agustin") was the Facility Health Services Director at Livingston, and G. Coniglio, M.D. ("Coniglio") was a private orthopedic specialist who provided medical services to DOCS inmates on a contract basis. On January 15, 2003, Plaintiff was transferred to Livingston from another correctional facility. At that time, Plaintiff informed the medical staff that he had a decreased range of movement in his right shoulder. On or about January 30, 2003, Agustin obtained an x-ray of Plaintiff's shoulder, which showed "minimal acromioclavicular arthrosis suggestive of minimal changes of impingement." On February 26, 2003, Agustin prescribed Celebrex for Plaintiff's pain. Plaintiff had previously been provided with acetaminophen, ibuprofen, naproxen, and cortisone injections. On April 24, 2003, Agustin arranged to have Plaintiff examined by Coniglio, who diagnosed "DJD [degenerative joint disease] of the right AC joint." Coniglio recommeded surgery, and specifically, "excision of the lateral end of the right clavicle." Coniglio scheduled surgery for August 26, 2003, and indicated that prior to surgery, Plaintiff should receive occupational therapy. (See, Agustin Affidavit ¶ 10 and Exhibit, Bates Stamp 00014).[1] However, on August 4, 2003, Plaintiff declined to receive occupational therapy, stating: "I have received several months of extremely painful

---

[1] In his Complaint, Plaintiff alleges that it was Agustin, and not Coniglio, who requested Occupational Therapy. However, Plaintiff has not produced any evidentiary proof in admissible form to support that allegation.

physical therapy for my right shoulder already. Last orthopedic visit I was told that I was being scheduled for surgery. I want the appropriate medical treatment for my shoulder." (*Id*. at Bates stamp 00017). As a result, Agustin cancelled the surgery. (Agustin Aff. at ¶ 12) ("Based upon Balkum's refusal to go to occupational therapy, I cancelled Balkum's surgery.").

In November 2003, Balkum saw Plaintiff again, at which time Plaintiff continued to complain of shoulder pain. Agustin again referred Plaintiff to Coniglio, who evaluated Plaintiff for a second time on November 6, 2003. Coniglio's diagnosis was "traumatic arthritis AC joint right shoulder," and he recommended "Mumford excision lateral end of right clavicle." On November 26, 2003, Agustin asked Coniglio to schedule surgery. On February 3, 2004, Coniglio performed the surgery, which was successful.

On November 16, 2006, Plaintiff commenced the subject action. The complaint alleges that Defendants conspired to delay Plaintiff's surgery. In support of that claim, Plaintiff alleges that Agustin should not have cancelled his first surgery merely because he refused to participate in occupational therapy. Plaintiff further contends that Unger was part of the conspiracy, since he denied Plaintiff's inmate grievance complaining about the cancellation of the surgery. Plaintiff also maintains that Agustin and Coniglio were part of a conspiracy, since, between his first and second consultations with Plaintiff, Coniglio changed the wording of his diagnosis from "DJD [degenerative joint disease]" to "traumatic arthritis," which Plaintiff believes was intended to make his condition appear less severe. Finally, Plaintiff alleges that Coniglio attempted to make it appear that he had ordered occupational therapy treatment for Plaintiff, when he did not.

On February 15, 2008, Defendants filed the subject motion for summary judgment [#17]. Defendants maintain that Plaintiff's claims are time-barred by the three-year statute of limitations that is applicable to actions brought under 42 U.S.C. § 1983. In that regard, they state that anything that occurred prior to November 16, 2003, falls outside of the limitations period. They further contend that none of the complained-of actions occurred after November 6, 2003. Defendants further state that none of the Defendants was deliberately indifferent to Plaintiff's medical care, and that Unger was not personally involved in such care at all. In support of the application, Agustin submitted an affidavit, in which he states, *inter alia*, that Plaintiff received appropriate medical treatment. Agustin further states that Unger was not personally involved in any decisions concerning Plaintiff's medical care.

The Court subsequently issued a Motion Scheduling Order [#30], directing Plaintiff to file and serve any responsive papers on or before October 31, 2008. Plaintiff did not file opposition papers, and Defendants' factual assertions are therefore accepted as true. *See*, Local Rule 56.1(c).

ANALYSIS

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See,*

4

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996)(*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), *cert denied*, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249; *see also*, FED. R. CIV. P. 56(e)("When a motion for summary judgment is made and supported as provided in this rule, and adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993). The parties may only carry their

respective burdens by producing evidentiary proof in admissible form. FED. R. CIV. P. 56(e). Moreover, since Plaintiff is proceeding *pro se*, the Court is required to construe his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).[2]

Plaintiff is suing pursuant to 42 U.S.C. § 1983, and the legal principles applicable to such claims are well settled:

> In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a federal right. See, *e.g., Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Additionally, "[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977).
> ***
> An individual cannot be held liable for damages under § 1983 "merely because he held a high position of authority," but can be held liable if he was personally involved in the alleged deprivation. *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir.1996). Personal involvement can be shown by: evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995).

*Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122, 127 (2d Cir. 2004).

Plaintiff alleges that Defendant violated his Eighth Amendment rights in connection with his medical treatment, and the legal standard for such claims is clear:

> In order to establish an Eighth Amendment claim arising out of inadequate

---

[2] Plaintiff was served with an <u>Irby</u> notice. *See*, Docket [#19].

6

> medical care, a prisoner must prove deliberate indifference to his serious medical needs. This standard incorporates both objective and subjective elements. The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind.
>
> Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation. [T]he Supreme Court [has] explained that the Eighth Amendment's prohibition on cruel and unusual punishments encompasses the deliberate failure to treat a prisoner's serious illness or injury resulting in the infliction of unnecessary pain and suffering. Because society does not expect that prisoners will have unqualified access to health care, a prisoner must first make this threshold showing of serious illness or injury in order to state an Eighth Amendment claim for denial of medical care. Similarly, a prisoner must demonstrate more than an inadvertent failure to provide adequate medical care by prison officials to successfully establish Eighth Amendment liability. An official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety, a state of mind equivalent to the familiar standard of 'recklessness' as used in criminal law.

*Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir.2003) (citations and internal quotations omitted). Courts have repeatedly held that disagreements over treatment do not rise to the level of a Constitutional violation. *See, Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir.1998)("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim."). Similarly, negligence constituting medical malpractice, without more, will not establish a constitutional claim. *Id*. (citation omitted).

Plaintiff also alleges that Defendants conspired to deny him medical treatment, and as to that claim,

> [t]o prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. The Second

> Circuit has recognized that such conspiracies are by their very nature secretive operations, and may have to be proven by circumstantial, rather than direct, evidence.

*Hill v. Melvin*, No. 05 Civ. 6645(AJP), 2006 WL 1749520 at *12, n. 23 (S.D.N.Y. Jun. 27, 2006) (citations and internal quotation marks omitted).  However, a Plaintiff cannot avoid summary judgment on a conspiracy claim merely by offering vague or conclusory allegations. *See*, *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) ("[A] complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.") (citation omitted); *see also, Hill v. Melvin*, 2006 WL 1749520 at *12  ("'Conclusory' allegations of conspiracy are insufficient to survive summary judgment on a claim of conspiracy under § 1983.") (collecting cases).

In the instant case, the Court finds, at the outset, that Plaintiff has not demonstrated a triable issue of fact as to whether his medical condition was sufficiently serious.  In that regard, it appears only that Plaintiff's surgery was delayed approximately six months, and that he suffered no adverse effects from the delay, apart from continuing pain, for which he received pain medication.  *See, Moody v. Pickles*, Civ. Action No. 9:03-CV-850 (DEP), 2006 WL 2645124 at *8 (N.D.N.Y. Sep. 13, 2006) ("Delays and interruptions in medical treatment of an inmate's medical condition, however, do not necessarily provide a basis for an Eighth Amendment claim.  Where a plaintiff complains of delays or interruptions in providing needed medical treatment, the court should consider the severity of the challenged delay  or interruption in treatment rather than the prisoner's underlying medical condition alone in determining whether plaintiff has shown

the existence of a sufficiently serious medical need.  Although a delay or interruption in medical care may amount to deliberate indifference, the Second Circuit has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment, ignored a life-threatening and fast-degenerating condition for three days, or delayed major surgery for over two years.") (*citing Smith v. Carpenter*, 316 F.3d 178, 184-87 (2d Cir. 2003)) (other citations and internal quotation marks omitted).  The Court finds that such a delay is not sufficiently serious to establish an Eighth Amendment violation.

Even assuming, *arguendo*, that Plaintiff's medical condition was objectively, sufficiently serious, there is no evidentiary proof in admissible form suggesting that any Defendant was deliberately indifferent to his condition.  In that regard, the record indicates that Agustin was attentive to Plaintiff's medical needs, as shown by the fact that he provided pain medication and diagnostic testing, and arranged for surgery.  It is true that Agustin cancelled the surgery.  However, this was due to the fact that Plaintiff refused to participate in occupational therapy.  Although Plaintiff believes that he should not have been required to participate in such therapy as a pre-condition to receiving surgery, such a disagreement over treatment does not create a triable issue of fact as to Agustin's subjective intent.  Additionally, Agustin continued to provide pain medication to Plaintiff, and approved the surgery after Plaintiff's condition did not improve.  These facts do not support a claim of deliberate indifference. *See, Taylor v. Kurtz*, No. 00-CV-700F, 2004 WL 2414847 at *4 (W.D.N.Y. Oct. 28, 2004) (Holding that a nine-month delay in obtaining knee surgery, during which time Plaintiff continued to receive treatment, did not

9

establish an Eighth Amendment violation.).[3] Nor has Plaintiff produced any evidentiary proof in admissible form that Unger or Coniglio were deliberately indifferent to his medical condition. In that regard, the record indicates that Unger was not personally involved in Plaintiff's medical care, and that it was Agustin, not Coniglio, who cancelled the surgery.[4]

Moreover, even assuming that Plaintiff could demonstrate a triable issue of fact as to his Eighth Amendment claim against Agustin, Defendants would be entitled to summary judgment on the conspiracy claims. The conspiracy claims are based solely on conclusory allegations, and Plaintiff has produced no evidentiary proof in admissible form to support them.

CONCLUSION

Defendant's summary judgment motion [#19] is granted, and this action is dismissed with prejudice. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance

---

[3]"[E]ven if Plaintiff's knee condition was a sufficiently serious injury for Eighth Amendment purposes, he cannot satisfy the subjective standard of deliberate indifference on Defendants' part. There is no proof that the Defendants were aware that a substantial risk of serious harm to Plaintiff existed, because there was no such risk in any delay in surgery. Plaintiff was regularly seen by the medical staff at GCF, sent for consultations with the orthopedic specialist at Strong Memorial Hospital, and was ultimately scheduled for and underwent knee surgery within nine months of his arrival at GCF."

[4]Plaintiff's claim against Unger would be time-barred in any event, since Unger denied Plaintiff's grievance in August 2003, more than three years before Plaintiff commenced this action. (Complaint ¶ 11). Defendants also maintain that the claim against Agustin is time barred, since Plaintiff's "surgery was scheduled prior to November 16, 2003." (Defendants' Memo of Law at 6). However, as discussed above, the record indicates that Agustin did not request such surgery until November 26, 2003. (Notice of Motion, Bates Stamp 00023).

with Rule 24 of the Federal Rules of Appellate Procedure.

Dated: Rochester, New York
      February 4 , 2009      ENTER:


     /s/ Charles J. Siragusa
    CHARLES J. SIRAGUSA
    United States District Judge